## Oliver v. Commonwealth.

(Decided May 1, 1925.)

### Appeal from Breathitt Circuit Court.

Homicide—Refusal to Instruct that Accused Might Use Reasonably Necessary Force to Thwart Robbery, Error.—In prosecution for killing, where accused testified deceased was attempting to take his pistol away and that shooting occurred during struggle, refusal to instruct that accused had right to use force reasonably

necessary to thwart robbery, even to taking human life, held error.

A. F. BYRD for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Under an indictment for murder, appellant was found guilty of manslaughter and sentenced to eighteen years in the penitentiary. The homicide occurred in March, 1924, on Spring fork of Quicksand creek in Breathitt county. Appellant and the deceased, Emory Miller, who did not know each other and who had never met before the fatal day, came on that day from their respective homes several miles across the mountains to call on some girls at the home of Jack Manns. Appellant, who had been drinking, had with him a jug of moonshine whiskey, and when Miller arrived and asked for a drink, appellant hospitably complied with his request. They repaired to the back side of the house for the purpose of thus refreshing themselves and Miller took a "good sized" drink. He then, in a surly manner, refused to return the jug and naturally quite an altercation arose between appellant and Miller about this. They kept up their fussing until they got back into the house and until Miller said that if the appellant "didn't shut up" he would stick him with a large, sharp-handled file he had in his hands. The appellant thereupon left the house and started down a narrow gauge railroad which ran along the side of the creek. The deceased soon followed him, and there is some testimony to the effect that he remarked on leaving Mann's house that he was going after the appellant and take his pistol away from him. The deceased did catch up with appellant and according to all of the testimony in this case he put his arms around appellant, but whether this was in friendly comradeship or in an effort to pinion the arms of appellant so that he could take his pistol away is in dispute. The witnesses for the Commonwealth did not see the parties until they were thus embraced, and they testified that just as they saw the couple, the appellant fired his pistol twice across the creek where two of them, young boys driving a cow, were and that when the deceased remonstrated with appellant for doing this appellant turned around and shot

him. Appellant claims that at this time the deceased was demanding his pistol and told him that if he did not give it up he would kill him and that the deceased had drawn his knife out, had opened it, and was threatening to cut appellant's "guts out" unless he surrendered the pistol, and that in the struggle over the pistol he fired his gun three times, two of which shots may have gone astray across the creek, but without intention, and the third of which struck the deceased. The deceased fell to his knees and appellant turned and went on up the railroad. The deceased then arose, walked off a little piece and fell again, where he was later found and taken to a nearby house. He died that night from the effects of the wound.

Numerous errors are relied upon for reversal, but we deem it necessary to consider but one, since the others, as for instance the alleged separation of the jury, may not occur at the next trial. The error complained of which warrants a reversal is the refusal of the trial court to instruct in substance that if the jury believed the deceased was in the act of committing a robbery by force and violence from appellant, the latter had a right to use such force as was reasonably necessary to thwart such robbery, even to the taking of human life if necessary. That appellant was entitled to such instruction is settled by the case of Flynn v. Commonwealth, 204 Ky. 572, 264 S. W. 1111. See also Howard v. Commonwealth, 198 Ky. 453, 248 S. W. 1059, and Gray v. Combs, 7 J. J. Mar. 478, where an interesting discussion may be found concerning this matter.

It is, therefore, the judgment of this court that the judgment of the lower court be reversed, with instructions to grant appellant a new trial.

Judgment reversed.