## Sawyer v. Commonwealth.

(Decided January 18, 1929.)

436

TURNER & DUFF for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant was convicted of the offense of voluntary manslaughter and sentenced to serve 21 years in the penitentiary. From that judgment of conviction he appeals.

Two grounds are urged for reversal. The first is misconduct on the part of the jury. Whether any misconduct on the part of the jury was in the light of the evidence on that point established may be seriously questioned; but even though we concede all the appellant claims in this regard, yet his own evidence establishes that this misconduct was known to him and his counsel before the verdict was returned. As they did not call the court's attention to this misconduct when they discovered it or move the discharge of the jury, they cannot now, after having speculated on the outcome of the verdict, and after it has gone adversely to their hopes, complain of such misconduct. Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318; Pierce v. Commonwealth, 215 Ky. 162, 284 S. W. 1035.

The second ground relied upon for a reversal is that the court erred in the fourth instruction. To properly discuss this instruction will require a very brief summary of the evidence. The deceased, Blanton Riley, was the brother-in-law of the appellant. Riley's first wife was a sister of the appellant, and on her death Riley married another sister of the appellant. The record establishes without dispute that Riley treated his second wife very cruelly, and finally abandoned her in September, 1926, with one little child and while she was expecting another. The appellant, about 21 years old and single, took up the burden of supporting his sister and her child, and they lived together in one of the houses belonging to a mining company for which appellant worked. This house was located on the hillside, with 12 steps running up to the porch from the road which wound around the base of the

hillside. The record shows that, after Riley had abandoned his wife, he on more than one occasion became much incensed at the appellant because the latter had observed him in the town of Hazard with women of questionable reputation. In December following the abandonment of the preceding September, Riley came to the home maintained by the appellant for his sister and himself and there flourished a revolver and threatened the lives of the appellant and his sister, tore up some of the household furniture, and was about to carry off the bed-clothing and furnishings, when third parties approached, whereupon he desisted. On the day of the homicide even, the evidence for the commonwealth establishes that this man Riley, although warned to stay away from appellant's home, announced his purpose of going over there and entering despite the fact that he had been forbidden to do so. The evidence shows that about 1 o'clock in the afternoon on the day of his death Riley left a neighbor's house and walked along the road to the bottom of the steps leading up to appellant's home. The commonwealth's proof admits that the appellant again warned him once to come no further. The appellant's proof establishes that appellant warned him twice again not to come into the place. Appellant says that he was in the light of his former experiences fearful of what Riley would do if he got into the house. In spite of the warning, Riley with an oath said that he would go where he "damned pleased," and started up the steps. It is admitted he had his hands in his pockets as he began the ascent. After appellant had warned him to come no further and Riley continued up the steps, appellant pulled a pistol he had upon his person and fired five shots very quickly into Riley's body, thereby killing him. Riley was carried immediately into the house, where he soon died. His body was then searched, but no weapon was found upon him.

The fourth instruction was the one bearing on the right of the appellant to defend his domicile. Appellant was entitled to such an instruction, although appellee vigorously argues to the contrary. Carroll v. Commonwealth, 221 Ky. 557, 299 S. W. 183. Appellant paid the rent for this place. It was his home. Riley had abandoned his wife and children. He was warned to stay away after his visit in December. At that time he had

committed violence in the house and had threatened the lives of the inmates. Thereafter he had announced his purpose in no uncertain terms of entering the house in spite of appellant's protests and warnings. Under such circumstances, appellant was justified in the belief that Riley's purpose in coming to the house on the day of the homicide was no better than that when he was there in December. Under these circumstances, appellant had a right to defend his home.

The lower court realized the propriety of giving an instruction on this phase of the case, but the instruction it gave was erroneous, in that it told the jury in substance that the appellant's right to defend his home turned on whether the jury believed from the evidence in the case "that the deceased Blanton Riley assaulted the home of Harvey Sawyer with a deadly weapon." The evidence without dispute showed that Riley was unarmed at the time he undertook to enter the home of the appellant. Therefore, if this instruction be correct, the appellant had no right to defend his home on the occasion in question. However, appellant's right to defend his home did not turn on whether Riley was armed with a deadly weapon, for he might have done almost as much damage to the inmates and the contents of the house with his bare fists as he could have with a deadly weapon. Although Riley was unarmed, the assault on the home and the inmates might have been as serious to the safety of the inmates, and especially that of Mrs. Riley, as it would have been had he been armed. Further, the appellant in acting in the defense of his home had the right to rely on what to him was reasonably apparent, and, if it reasonably appeared to him that Riley was armed when he attempted his entry, appellant had a right to act upon that appearance, although it turned out as a matter of fact that Riley was unarmed.

For this error in the instruction, the case must be reversed, with instructions to grant the appellant a new trial in conformity with this opinion.