## Madden v. Commonwealth.

(Decided March 3, 1931.)

704

F. M. JONES and J. G. FOSTER for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

On Friday night, April 12, 1929, the deceased was in the store of appellant at Disney, Ky. He procured the appellant to cash a check for him for $17. In order to cash the check, appellant went to his residence to get his pocketbook in which he kept his money. He returned to the store and cashed the check. He removed his coat in which he had his pocketbook, and laid it on the ice box. The deceased called for a "dope" (Coca-Cola) and waited on himself by going to the ice box and getting it. He then left the store. After the deceased left, appellant put on his coat, and discovered his pocketbook and money were missing. Appellant then went home and spent the night. The next morning while he was in the garden setting tomato plants Cal Thomas came by and requested him to go to the store to get him some tobacco. After obtaining the tobacco, Thomas departed,

when deceased came to the store. On arriving, he explained to appellant his intention of going to Tennessee to look after the estate of his wife. Deceased further stated that he had been discharged and was without employment and was without funds with which to support his family while in Tennessee. The appellant explained to him that he was not selling his goods on credit, and that he could not afford to credit the deceased, and followed up this statement by saying that he had lost all of his money. The deceased then asked the appellant: "How did you lose it? I heard something about that. You don't think I got it?" The appellant responded, "No, I am not accusing any one of getting it," when deceased remarked, "I would not take anything you had." During this conversation deceased was whittling on a piece of wood, and picking at the flap on his coat pocket, when appellant observed the strings of his pocketbook hanging out of the pocket of deceased's coat. He reached and jerked the pocketbook from the pocket of deceased, and deceased began to cut appellant with his knife. Appellant shoved him away, and, in the scuffle obtained his pistol and shot deceased. At the time deceased was shot he was trying to cut appellant and had cut him with his knife in two different places.

The witnesses Wright, Wynn, and Short were present or near the place of the difficulty. Each gave his version of the occurrence. Short corroborates appellant as to the use of the knife. The appellant was indicted, tried, and convicted by a jury, and by their verdict, his punishment was fixed at confinement in the penitentiary for seven years. Judgment was accordingly rendered, from which he now appeals. He insists that he is entitled to a reversal on the grounds of (1) the admission of incompetent evidence; (2) failure of the court to give an instruction on the right of appellant to defend himself and property while in his own store.

The evidence of a dying declaration of deceased is contained in a paper signed in the presence of, and sworn to, by him, before a notary public. The testimony of the notary establishes that the paper was read to and understood by the deceased before and at the time it was sworn to by him; that deceased understood the statements therein contained. The first part of the statement is written in the third person, and the latter part in the first person. Even with this appearing, it is shown without contradiction that it is the statements of

deceased. The statements therein described the physical condition of deceased at the time, and contained a statement showing that he was in extremis, and that he was conscious thereof. His death followed a few hours after the paper was signed by him. We have often held that dying declarations, when reduced to writing and signed by the person making the same, are competent in such cases. Hendrickson v. Com., 73 S. W. 764, 24 Ky. Law Rep. 2173; Fuqua v. Com., 73 S. W. 782, 24 Ky. Law Rep. 2204; Sailsberry v. Com., 107 S. W. 774, 32 Ky. Law Rep. 1085; Lucas v. Com., 153 Ky. 424, 155 S. W. 721; Edgars v. Com., 195 Ky. 827, 243 S. W. 1023; Winstead v. Com., 195 Ky. 484, 243 S. W. 40. To render statements admissible as a dying declaration, it must be made to appear that deceased was in extremis and all hope of recovery given up. Eversole v. Com., 157 Ky. 478, 163 S. W. 496; Blackerby v. Com., 200 Ky. 832, 255 S. W. 824; Little v. Com., 209 Ky. 263, 272 S. W. 721. The state of extremis and consciousness of impending death or that he cannot recover, necessarily can only be shown by the statement of deceased. The fact that such statement is reduced to writing and signed my him, and not in parol, which is the most frequent method of showing his condition, does not render it incompetent. In measuring the competency of dying declarations, the rule is that the statement must be made under such circumstances, and when the decedent has given up hope of living, and that the utterance does not spring from a motive to fabricate or serve himself. Rogers v. Com., 161 Ky. 754, 171 S. W. 464; Stewart v. Com., 235 Ky. 670, 32 S. W. (2d) 29. But this rule does not authorize the exclusion of written statement constituting a dying declaration on the ground that it also contains the statements of deceased, showing his state of extremis and his consciousness thereof. After a careful consideration, we are convinced that the writing signed by deceased, and offered in evidence, is competent as his dying declaration. The writing, in addition to narrating the occurrence in which deceased received mortal wounds from which his death resulted, contains this: "The only reason I know he would have to shoot me is because I would not go with him to kill Lawrence Madden." The appellant objected to this clause and its reading to the jury. The court sustained his objection and excluded it from its consideration. Thereupon he moved the court to exclude

all of the testimony of the witness by which this writing was introduced. The last sentence of the writing is in these words: "He wanted to borrow my gun and me go with him to kill Lawrence Madden, and I told him no, I had a family to keep." No objection appears in the record to have been made to the reading to the jury of this sentence. No motion appears to have been made to exclude it from its consideration. It may be conceded that this statement was incompetent and should not have been permitted to have been heard by the jury, but appellant is in no position to complain on account thereof, since the objection to the written statement as a whole, or to the testimony of the witness by which it was introduced as evidence, is insufficient. No objection was made to the reading of the particular sentence. The rule is that for an objection to be available when made to the testimony of a witness or as to the contents of a writing, it must be specifically directed to that portion of the testimony which is incompetent, and an objection to the evidence as a whole, when there is contained in it both competent and incompetent evidence, should be overruled. In the absence thereof, no complaint against it will be considered by this court. Strong v. Com., 216 Ky. 98, 287 S. W. 235; Meads v. Com., 225 Ky. 177, 7 S. W. (2d) 1052; Cochran v. Com., 236 Ky. 284, 33 S. W. (2d) 39.

The next complaint of appellant is that the court failed to instruct the jury as to his right of self-defense in defending himself and his property while within his own store. The evidence shows that the shooting of deceased by appellant was solely in defense of his person and to rid himself of impending danger at the hands of the deceased. No evidence was offered or heard showing or tending to show the right of self-defense on the ground that he was protecting his property or to rid his premises of the presence of deceased. In the absence of such evidence, the court did not err in failing to give the instruction. Slaven v. Com., 229 Ky. 534, 17 S. W. (2d) 432; White v. Com., 225 Ky. 596, 9 S. W. (2d) 720; Howard v. Com., 227 Ky. 142, 12 S. W. (2d) 324; Collins v. Com., 227 Ky. 349, 13 S. W. (2d) 263; Sawyer v. Com., 227 Ky. 435, 13 S. W. (2d) 267. The appellant had regained possession of his pocketbook, and money. This started the trouble. He was without right in law to kill deceased to protect his property, even if deceased was endeavoring to interrupt him in the possession

thereof, without force or violence endangering his life or threatening him with great bodily harm. Stacey v. Com., 189 Ky. 402, 225 S. W. 37, 25 A. L. R. 490; McClelland v. Kay, 14 B. Mon. 103; Howard v. Com., 198 Ky. 453, 248 S. W. 1059; Flynn v. Com., 204 Ky. 572, 264 S. W. 1111; Com. v. Beverly, 237 Ky. 25, 34 S. W. (2d) 941.

Moreover the self-defense instruction given by the court is in the usual form and authorized the jury to acquit the appellant if it believed he shot and killed deceased in order to protect himself from danger, real or to appellant apparent.

Wherefore the judgment is affirmed.