## Ambrose v. Graziani.

(Decided February 13, 1923.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Infants—Next Friend.—The duties of a next friend of an infant are confined to the bringing and prosecution of an action in the name of and for the benefit of the infant; and as the next friend is under no bond, his authority ends with the prosecution of the suit and he has no authority to collect anything that may be recovered therein.

2. Infants—Next Friend.—A next friend has no authority to compromise or settle or adjust the claim of the infant.

3. Infants—Next Friend.—It is within the power of the next friend, as a necessary incident to the prosecution of a claim for the benefit of an infant, to employ an attorney and to contract to pay him a fee, but such fee must always appear to be a reasonable one.

4. Infants—Next Friend—Repudiation of Settlement.—An infant has the right to repudiate a settlement attempted to be made by his next friend, and when he does repudiate it, and acting through his statutory guardian institutes an action on the same cause of action attempted to be settled, there is a total failure of consideration for the attempted setlement, and money paid in such settlement is money had and received by the person accepting same, and may be recovered by the person paying it.

5. Attorney and Client—Appropriation of Money Received in Settlement—An attorney receiving money in payment of an unauthorized settlement has no right to appropriate part of the same to the payment of a fee which he has not earned by the prosecution of a suit, or by bringing about a final settlement of the controversy.

EDWARD J. TRACEY for appellant.

HORACE W. ROOT for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Prior to the 14th of September, 1917, Hugo Cavoli, an infant, had a claim for damages against appellant be-

cause of personal injuries alleged to have been inflicted upon him. The infant's father, Louis Cavoli, assuming to act as next friend of his infant son, employed appellee Graziani either to institute suit for damages or procure a settlement of same without suit.

Accordingly Graziani got in touch with appellant and notified him the claim had been placed in his hands for collection or settlement. Negotiations between them and Louis Cavoli finally resulted on the 14th of September, 1917, in the settlement of the claim by appellant and Louis Cavoli acting for his infant son. That settlement is evidenced by a writing in this record and the same was dictated by appellee in his law office and signed by appellant and Louis Cavoli. That writing recites that it was entered into ''For the purpose of settling all claims and demands on the part of Hugo Cavoli and Santo Ambrose, it is agreed that the payment of $500.00 is to be in full of all claims and demands, and to be receipt in full of all claims growing out of said matter, and said Santo Ambrose is to pay said sum in settlement of all claims and demands which is to be in full for all suffering of said infant of body or mind, doctor's bill, and all claims of said Hugo Cavoli of every kind whatsoever,'' and at the time said paper was executed appellant paid to appellee Graziani the five hundred dollars.

Out of that sum appellee retained his fee of one hundred dollars and paid to Louis Cavoli, the father and next friend of the infant, the remaining four hundred dollars. Thereafter the infant repudiated the settlement and declined to be bound by it, and instituted through his statutory guardian, another suit on the same cause of action against appellant.

This is an action by appellant against appellee alleging these facts and asking for a judgment for the five hundred dollars and its interest. Upon a trial in the circuit court a directed verdict was ordered for the defendant, although a similar verdict was asked for by the plaintiff, and this appeal is the result.

The essential facts are practically undisputed and are as above set out.

The office of the next friend of an infant is confined to the bringing and prosecution of an action in the name of the infant for the benefit of the infant, and it is perfectly clear that inasmuch as the next friend, or *prochein ami,* is under no bond, his authority ends with the prosecution of a suit, and if anything is recovered he has no

authority to collect same. Not only so, he has no authority to compromise or settle or adjust a claim of the infant, but, on the contrary, his only duty and the only thing he is authorized to do is to prosecute in the name of the infant, and for the infant's benefit, his cause of action.

Infants are peculiarly the favorites of courts, and to say that one acting in such capacity, who has given no bond guaranteeing the repayment to the infant, could collect money coming to him or could enter into a compromise and settlement which would bind the infant, would be, in most cases, to place such helpless people absolutely at the mercy of designing persons. So far as we are aware no court ever has held that one acting in such capacity for an infant has authority to compromise the infant's claim or to receive money for the infant in settlement of same.

It has been held in this state that it was within the power of a next friend as a necessary incident to the prosecution of a claim for the benefit of the infant, to employ an attorney and contract to pay him a fee, but that such fee must always appear to be a reasonable one. Sanders v. Woodbury, 146 Ky. 153; Elk Valley Coal Mining Co. v. Willis & Meredith, 149 Ky. 449.

It is suggested, however, as it has been held by this court in the case of Manion v. Ohio Valley Railway Company, 99 Ky. 504, that a statutory guardian may compromise a claim for unliquidated damages held by his ward a next friend may exercise the same authority. But the cases are very different; the guardian has given a bond to account to his infant ward, while the next friend has given none. If the guardian makes a fraudulent or improvident settlement of a claim of his ward he is liable therefor to the ward, while a next friend has no bond and there is no assurance that any right can be enforced against him.

It necessarily follows from what we have said that the infant had the right to repudiate this settlement so made by his father and next friend, and when he did repudiate it, and, acting through his statutory guardian, instituted another suit on the same cause of action against appellant, appellant had no recourse except to treat the unauthorized settlement as void and seek the recovery of his money from the person who had received it without authority. Appellee was an attorney of large practice and great experience, particularly in cases of

this nature, as is shown by the records of this and other courts, and he must have known when he received this five hundred dollars it was subject to a ratification by the infant, or by his authorized guardian, and he knew when there was no such ratification he had received from appellant five hundred dollars for which appellant had received no consideration whatsoever, and that there was a total failure of consideration.

The admitted facts show it is a case of money had and received without consideration, and for which appellee was bound to account upon a failure to consummate the settlement. Wood v. Claiborne (Ark.), 11 L. R. A. (N. S.) 913, and note.

The claim that actual fraud must have been shown on the part of appellee in receiving the money before this action can be maintained cannot be upheld. Assuming his motives were of the best, and that he intended to have a guardian qualify for the infant and pay the money to the guardian and thereby effectuate the settlement, upon his failure to do so, he knew this appellant had parted with his money without consideration and must have known it was his duty to repay the same to him.

It is suggested, however, that appellee in any event had the right to retain the one hundred dollar fee out of the proceeds of this supposed settlement. In the first place, appellee as a lawyer knew the next friend had no authority to make the settlement, and in the next place he knew when the settlement was repudiated by the infant and there was a total failure to effectuate it so as to make it binding, he had not earned his fee, for the reason he had not prosecuted the action to judgment nor had he brought about a final settlement of it.

It follows from what we have said that on the admitted facts appellant was entitled to a directed verdict.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.