**ZOGG v. O'BRYAN (three cases).**

Court of Appeals of Kentucky.

Jan. 23, 1951.

As Modified on Denial of Rehearing
March 23, 1951.

512

Anderson & Anderson, and David C. Brodie, all of Owensboro, for appellants.

Robertson & James, Woodward, Hobson, Bartlett & McCarroll, all of Owensboro, for appellees.

John W. Beard, and John B. Anderson, of Owensboro, guardians ad litem for infant, Joseph Franklin Zogg.

VAN SANT, Commissioner.

These appeals are from a single judgment entered in three consolidated actions arising out of a collision between an automobile owned by Mary Martin Zogg and driven by her seventeen-year-old son, Joseph Franklin Zogg, and one owned and being driven by Robert Preston O'Bryan, at the intersection of Frederica and 18th Streets in Owensboro, on November 26, 1948 at about 11:30 o'clock p. m. Zogg was proceeding north and O'Bryan south on Frederica. Commencing with the north curb line of 18th Street, Frederica narrows in width. At that point and north thereof it is approximately 45 feet; south of that point it is approximately 70 feet in width. Zogg intended to continue his northerly course but was required to veer to the left because of the narrowing of the street. O'Bryan changed his southerly course by turning left or east into 18th Street. Zogg testified he was traveling at approximately thirty miles per hour as he approached the intersection; O'Bryan estimated the speed at not less than 50. The

speed at which O'Bryan was traveling does not appear in evidence but he testified that he came to a full stop north and west of the center point of the intersection when he was struck by the Zogg car. Zogg testified that he was proceeding northerly on the east side of the medial line of Frederica Street and the cars collided when O'Bryan drove directly in his path. O'Bryan's wife and three of their children were passengers in his car. Both Mr. and Mrs. O'Bryan as well as Zogg were injured.

The first of these actions was instituted against O'Bryan by Joseph Zogg, who sued by his father, Frank Zogg, as his next friend. In that action O'Bryan filed a cross-petition against Mrs. Zogg and a counterclaim against the plaintiff. The court did not, nor was he requested to, appoint a guardian ad litem to defend the plaintiff in the counterclaim. Defense to the counterclaim on behalf of the infant was made by the attorneys who filed the suit. The next suit was instituted by Mrs. O'Bryan against Joseph Zogg and his mother, Mary Martin Zogg, to recover for personal injuries sustained in the accident. In that action Honorable John W. Beard was appointed guardian ad litem for the infant defendant and filed answer for him. The third suit was filed by Mary Martin Zogg against O'Bryan to recover for injuries sustained to her automobile in the collision. On the 13th day of June, 1949, an order was entered directing the three cases to be "consolidated and tried together". On the 16th day of June, an order was entered in the second suit, appointing Honorable John B. Anderson guardian ad litem, in addition to the guardian ad litem theretofore appointed, with directions that the guardians ad litem "represent and defend this action for and on behalf of the said infant defendant". No additional pleading was filed on behalf of the infant before the trial. The cases were tried together, resulting in verdicts for the O'Bryans against the Zoggs and pursuant thereto judgment was entered allowing Robert Preston O'Bryan to recover the sum of $1222.65 of Joseph Zogg and Mary Martin Zogg on the counterclaim and cross-petition in the action first herein referred to

and allowing Frances Elizabeth O'Bryan to recover the sum of $4996.65 of Joseph Zogg and Mary Martin Zogg in the second action. These awards and dismissal of the petition in the third action were entered in a single judgment, from which the Zoggs have appealed.

Appellees contend that none of appellants' complaints hereinafter set out should be considered, because they were entitled to a peremptory instruction under the evidence. From what we have said at the outset of this opinion, it is obvious that this contention cannot be sustained.

The first complaint is that the court erred in the instruction which required Zogg to yield the right of way to O'Bryan, if the jury believed from the evidence that O'Bryan first reached and entered "the intersection of 18th Street" with Frederica Street. It is the contention of appellant that the words "beyond the center point" should have been inserted after the word "intersection" in this instruction. Reliance is had on the opinions of this Court in Walton v. Grant, 302 Ky. 194, 194 S.W.2d 366, and Bridge Transit Co. v. Le Seuer, 304 Ky. 403, 200 S.W.2d 942. Appellees contend that the instruction is correct and those approved in Walton v. Grant, supra, and Bridge Transit Co. v. Le Seuer, supra, are erroneous because the O'Bryan car would never lawfully reach the center point of the intersection since by another instruction it was required to change its course short of the center point. It is true, as appellees contend, that following the course required of him by the other instructions, O'Bryan would not have reached the center point of the intersection of 18th and Frederica Streets in a north-south direction; but, in making the turn from a southerly course to an easterly course, he passed or would have passed the center point of the street in a west to east direction. Thus, from the time O'Bryan commenced the turn into 18th Street, he was traveling a course which inevitably would intersect the course being traveled by Zogg; and, since Zogg was or would have been on O'Bryan's right when the cars arrived, or should have arrived, at the intersection of their paths, Zogg was required to yield the

right of way only if O'Bryan first reached such point of intersection, KRS 189.330(2). The respective rights and duties of the parties under this section of the Statute however are secondary to Zogg's right and O'Bryan's duty under the provisions of KRS 189.380(2) which reads: "(2) Every person operating a vehicle on the highway before turning, stopping or changing the course of the vehicle and before turning the vehicle when starting it shall first see that there is sufficient space for the change or turn to be made in safety, * * *."

A proper instruction under this section was given by the court in instruction (a) under "the further duty of said Robert Preston O'Bryan" and is identical to instruction No. I(5) in the Walton case, supra. Despite this fact, we can appreciate the possibility of confusion arising in the minds of the jurors in reading these instructions, unless their attention is called to the fact that O'Bryan must comply with the duties imposed on him in making a left turn before he has the right to proceed toward the intersection of his and Zogg's respective paths. Since the judgment must be reversed for other reasons and in order to eliminate the possibility of confusion, we have prepared an instruction to be given on the next trial, in lieu of instruction (c) which was given by the court under the designation "further duties of Joseph Franklin Zogg". This instruction will be given with those reciting the duties of O'Bryan instead of those reciting the duties of Zogg, and will read:

(It was the further duty of O'Bryan)

"To yield the right of way through the intersection to Zogg unless the jury shall believe from the evidence that O'Bryan, after having observed the duties imposed on him by instruction (a) under 'the further duty of O'Bryan', first reached the intersection of the respective paths of the O'Bryan and Zogg automobiles to the east of the center point of the intersection, in which event only, it was the duty of Zogg to yield the right of way through the intersection to O'Bryan."

Appellants next contend the court erred in refusing to permit evidence of injuries sustained by Joseph Zogg in a fall which occurred on a stairway while he was convalescing from the injuries he received in the accident. He originally sustained injuries to his knee which required an operation in which holes were drilled in the larger fragments of the bones through which a silver wire was inserted for the purpose of pulling and fixing the bones in close proximation. The leg was then placed in a cast for approximately seven weeks. Upon removal of the cast the knee was fitted with a brace to assist the patient in walking. When he fell on the stairs, the wire was torn loose and the operation had to be performed over again. There was no showing that the second fall was in any way attributable to the injury sustained in the automobile accident. Zogg testified merely that he missed the step and fell. His missing the step might have been the result of his own negligence or he might have been defying his doctor's orders in using the steps. In the absence of showing that the second injury was the direct result of a mishap traceable to the injury sustained in the automobile accident, the evidence was not competent and the court did not err in sustaining the objection to its introduction. East Tennessee Telephone Co. v. Jeffries, 153 Ky. 133, 154 S.W. 1112; 9 A.L.R. 260. Compare other annotations starting at 9 A.L.R. 255. Wagner v. Mittendorf, 232 N.Y. 481, 134 N.E. 539, 20 A.L.R. 520 and annotations 20 A.L.R. 524.

The next complaint is in respect to the court's refusal to permit appellant Joseph Zogg, in the circumstances we will relate, to read certain questions and answers from the deposition given by him as on cross-examination previous to the trial. On cross-examination in the trial, counsel for O'Bryan confronted Zogg with a statement contained in the deposition which appeared to be in conflict with his direct testimony. It is contended that a reading of five questions and answers contained therein, would clarify and reconcile his direct testimony with the answer he gave to the particular question in the deposition. We are of the opinion the court erred in refusing this evi-

dence under the rule that where a party seeks to impeach a witness by the introduction of a portion of a former deposition, the opposing party may introduce the entire deposition or as much of it as contains matters which will clarify and reconcile the evidence given on the trial and that given in the portion of the former deposition introduced. Blackerby v. Commonwealth, 200 Ky. 832, 255 S.W. 824. O'Donnell's Adm'r v. Louisville Electric Light Co., 55 S.W. 202, 21 Ky.Law Rep. 1362.

■■ The court refused to permit Mary Martin Zogg to qualify as a witness concerning the values of automobiles. Since no avowal was made, this point may not be raised as a basis for reversal, nevertheless it was competent and should be admitted if offered at the next trial.

■ The complaint in respect to the exclusion of testimony of Mrs. Zogg concerning the suffering of her son from the injuries he sustained is well taken. Ordinarily, laymen may not give opinion evidence unless they testify to the facts or circumstances upon which they base their opinions or conclusions. There is another rule however which seems to be an exception to the general rule and that is: that a layman may testify to opinions or inferences drawn from what he has observed while in attendance upon the injured person concerning the degree of physical suffering which the injured has endured. The reason for the rule is that one who has had an opportunity to observe the injured person cannot portray to the jury, in a clear and perfect manner, the scene in the sick room as it presented itself to him and upon which he has based his opinion or inference. The tones of voice, movements of the body, and facial expressions, all of which portray pain and physical suffering, manifest themselves to the observer in a natural picture, but they cannot be reproduced by the witness so as to impress the jury to the extent that their original production impressed the witness. See annotations in 28 A.L.R. commencing at page 362. This rule has been followed in this jurisdiction. Kentucky Midland Coal Co. v. Vincent, 159 Ky. 100, 166 S.W. 800; Lawson's Adm'r

v. Brandenburg, 240 Ky. 68, 41 S.W.2d 201. We are of the opinion that the testimony was competent.

Mr. O'Bryan's testimony that his wife was unable to perform her household duties after the accident was so superfluous that, if incompetent, it should not be noticed. She was confined to her bed four months with a broken leg which is conclusive evidence that she was unable to do her household work and her husband's testimony to that effect added nothing to the evidence. If there had been some question concerning her ability to do her household work, we would have a different situation and a different question.

■ On direct examination, Mr. O'Bryan testified to certain facts concerning the happening of the accident which were in sharp dispute and in conflict with his recitation concerning the same matters given in a statement signed by him before the trial. Counsel for appellant offered the written statement given by Mr. O'Bryan in evidence to contradict his testimony at the trial. The Court sustained an objection to the introduction of the signed statement. We do not know the basis for this ruling, but it seems to have been that the written statement discloses the fact that Mr. O'Bryan has a contract with an insurance company indemnifying him for certain expenses incurred as a result of injuries sustained in the accident. We are of the opinion that the court should not have sustained the objection to the statement as a whole; but if the objection had been confined to that portion referring to insurance, he should have stricken therefrom the objectionable portion and have permitted the statement so deleted to have been read and introduced in evidence. Ham v. Miss C. E. Mason's School, The Castle, Inc., 249 Ky. 478, 61 S.W.2d 7; Harrod v. Armstrong, 177 Ky. 317, 197 S.W. 816; Madden v. Commonwealth, 237 Ky. 703, 36 S.W.2d 346, and cases therein cited. Appellee relies on Smith v. Blue Ribbon Lines, Inc., 312 Ky. 246, 227 S.W.2d 185. In that case the only part of the letter which was competent and relevant to the issue was read to the jury and admitted by the witness, but, because the remainder of the letter was incompetent or irrelevant,

the court properly refused to let it be introduced. In the instant case, O'Bryan denied making statements contained in the writing he admittedly signed. Such statements were pertinent to the issue, were admissions against interest, and contradicted his testimony on the trial.

The final ground for reversal relied on by both appellants is that counsel for appellees injected into the record incompetent references to the fact that the Zoggs were indemnified by an insurance company for any amount they might be required to pay under a judgment against them. Robert Milby investigated the accident and obtained the statement signed by Mr. O'Bryan to which we previously have referred. Appellees introduced him as a witness in rebuttal of the testimony of Mr. O'Bryan. He was then asked whom he represented when he took the statement and he testified that he represented the Travelers Insurance Company. He was then asked if the Travelers Insurance Company carried an indemnity policy issued to Mrs. Zogg which, at the time of the accident, covered the operation of Mrs. Zogg's automobile which was involved in the accident. Over objection of appellants, he was permitted to answer the question in the affirmative, but the court admonished the jury to accept this evidence only "under the circumstances to show his (Milby's) business relation and employment or interest in the transaction: anything that might be calculated to influence the witness in giving testimony and can be considered for no other purpose." Whilst this admonition was not in the usual form, we are of the opinion it was in substantial compliance with the requirements of an admonition of this sort, and the evidence was competent under the admonition given. The rule is that testimony to the effect the defendant in an action for damages is indemnified by an insurance company is incompetent, where such testimony sheds no light upon the issues being tried and it is introduced solely for the purpose of creating prejudice in the minds of the jurors to induce them to render a verdict for plaintiff. But where, as here, the representative of the insurance company has investigated the accident and testified for the insured, testimony showing his connection with the company indemnifying the defendant is competent solely for the purpose of establishing a basis for the witness's bias or prejudice. Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S.W. 958; Cadle v. McHargue, 249 Ky. 385, 60 S.W.2d 973; Silver Fleet Motor Express v. Gilbert, 291 Ky. 696, 165 S.W.2d 541. The introduction of this evidence, however, did not justify the type of argument complained of. In his closing remarks, counsel did not argue the evidence concerning Milby's employment in the light of its effect on the credibility of his testimony; he argued the testimony as if it were competent as substantive evidence, thus to show the Zoggs would not be required to pay the judgment. On the next trial, if Milby is introduced as a witness, evidence of his connection with the insurance company may be shown under a proper admonition and, if reference is made to it in the closing argument, it should be only by way of attack on the credibility of the witness.

One of the errors we have discussed was not prejudicial to appellants in the action instituted by Mrs. O'Bryan, but the exclusion of the former statement of Mr. O'Bryan, the exclusion of the former testimony of Joseph Zogg, and the closing argument were. These errors alone require reversal of the judgment in all of the consolidated cases.

One question remains which affects only so much of the judgment as permits appellee to recover of the infant, Joseph Zogg, on the counterclaim in the action first herein referred to. As we have stated, no guardian ad litem was appointed to defend the counterclaim on behalf of the infant. It is true that the attorneys who filed the petition for the infant defended the counterclaim, and ably so. It so happened that one of such attorneys was appointed as the "additional" guardian ad litem to defend the second action hereinbefore referred to, which is the one by Mrs. O'Bryan against the infant and his mother. The guardian ad litem first appointed in that case filed answer for the infant on the day the cases were consolidated for

trial and before the appointment of the second guardian ad litem. The infant was not a party to the third action. It is contended that the judgment is erroneous because the infant was not before the court on the counterclaim which was the basis of the judgment against him. In Ambrose v. Graziani, 197 Ky. 679, 247 S.W. 953, the court held that the office of next friend of an infant is confined to the bringing of an action in the name, and for the benefit, of the infant and he cannot even collect the judgment for his protege. Under subsection 3, Section 36 of the Civil Code of Practice, no judgment shall be rendered against an infant until the regular guardian or the guardian ad litem of such infant shall have made defense or have filed a report stating that after a careful examination of the case he is unable to make defense. In Smith v. Ferguson, 60 Ky. 424, 3 Metc. 424 and Whalen et al. v. Hopper's Guardian et al., 152 Ky. 727, 154 S.W. 40, it was held that this section of the Code applies to the defense of a counterclaim as well as to one asserted in the petition of an original action; and in several cases it has been held that a decree against an infant will be reversed where a person other than his regular guardian or guardian ad litem defends for the infant. See 11 Ky. Digest, Infants, ☞78(1). The consolidation of a case in which a guardian ad litem has been appointed with one or more in which neither a guardian appears nor a guardian ad litem has been appointed to appear does not cure the omission, so as to permit a judgment to be entered against the infant on the cause asserted in either of the latter cases, whether the cause be asserted by petition or counterclaim. Smith v. Smith, 255 Ky. 191, 72 S.W.2d 425. It follows that Joseph Zogg was not before the court on the counterclaim upon which judgment against him was rendered.

The judgment is reversed with directions that it be set aside and that appellants be granted a new trial in each of the actions. The actions may be tried together under the original order of consolidation and shall be conducted in a manner not inconsistent with this opinion.